IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Beecher Carlson Insurances Services, LLC, <br><br>  Plaintiff, <br><br> v. <br><br> David Dotson, et al., <br><br>  Defendants. | No. CV-11-02255-PHX-ROS <br><br> **ORDER** |

Before the Court are three motions for summary judgment (Docs. 55, 89, 113), a motion to strike (Doc. 138), and a motion for sanctions due to spoliation of evidence (Doc. 115). For the following reasons, the three motions for summary judgment will be denied. The motion to strike and the motion for sanctions due to spoliation of evidence will be granted.

**BACKGROUND**

Defendant David Dotson ("Dotson") began working for Plaintiff Beecher Carlson Insurances Services, LLC ("Beecher") as an agent selling general business insurance in 2008. (Doc. 114 at 1). Dotson signed a non-solicitation provision with Beecher as part of his employment contract. (*Id.*)

In April of 2011, Dotson began discussions with Defendant Nexus Partners Insurance, LLC ("Nexus") about moving from Beecher to Nexus. (Doc. 88 at 3). During the hiring process, Dotson disclosed that he had a non-solicitation provision in his contract with Beecher, but Nexus did not ask for a copy of the

contract. (*Id*. at 4). Nexus instructed Dotson to consult with an outside attorney about his contract with Beecher as a precondition to hiring. Nexus also instructed Dotson not to violate the terms of the contract. (Doc. 56 at 2). Dotson left Beecher in September of 2011 and immediately began to work for Nexus. (*Id*.)

Prior to his resignation, Dotson compiled a spreadsheet containing Beecher's customers, their revenue, the policy renewal dates, and the insurer, and provided a copy of the spreadsheet to Nexus. (Doc. 113 at 7). Upon resigning, Dotson contacted select Beecher customers and informed them that he had taken a position at Nexus and was no longer employed by Beecher. (Doc. 88 at 6–7). Several of the customers Dotson contacted moved their business to Nexus. (*Id*. at 8). Dotson later asked CORE Institute ("CORE"), a former Beecher customer that moved to Nexus, to obtain a copy of Beecher's policy notebook and provide the notebook to Dotson. (Doc. 113 at 8). Dotson then scanned this notebook and gave a copy to Nexus. (*Id*.)

Beecher brought claims against Dotson for breach of contract; breach of the implied covenant of good faith and fair dealing; misappropriation of trade secrets; and breach of the duty of loyalty. (Doc. 24). Beecher brought claims against Nexus for intentional interference with contract and intentional interference with business expectancies. (*Id*.)

Dotson moves for summary judgment on the claims brought against him based on the non-solicitation provision of his contract. (Doc. 89). Beecher moves for summary judgment on all its claims against Dotson. (Doc. 113). Nexus moves for summary judgment on the two claims brought against it. (Doc. 55). In addition, Beecher moves to strike Nexus' response to Beecher's motion for summary judgment on its claims against Dotson. (Doc. 138). Beecher also moves to sanction Dotson and Nexus for spoliation of the spreadsheet. (Doc. 115).

## JURISDICTION AND LEGAL STANDARDS

This Court has subject matter jurisdiction via 28 U.S.C. § 1332 (Diversity

Jurisdiction). Therefore, federal procedural law applies, including the federal standard for summary judgment.

Under that standard, summary judgment is appropriate pursuant to Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *United States v. Kapp*, 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: either (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine disputes of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine dispute remains. *Celotex*, 477 U.S. at 322. The nonmoving party cannot oppose a properly supported summary judgment motion by simply "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. The party opposing summary judgment must also establish the admissibility of the evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 285 F.3d 764, 773 (9th Cir. 2002) (a court deciding summary judgment motion "can only consider admissible evidence"); *see also Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d

1179, 1181 (9th Cir. 1988) ("It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment."). A party simply cannot avoid summary judgment being entered against it by pointing to inadmissible evidence. *See* Fed. R. Civ. P. 56, 2010 Advisory Committee Notes ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.").

When ruling on a summary judgment motion, the court must view every inference drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The court does not make credibility determinations with respect to evidence offered. *See T.W. Elec.*, 809 F.2d at 630–31 (citing *Matsushita*, 475 U.S. at 587). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir. 1980).

## ANALYSIS

**I. Dotson's Motion for Summary Judgment**

Dotson argues that he is entitled to summary judgment on the claims brought against him based on the non-solicitation provision because the provision is unenforceable as a matter of law. (Doc. 89). According to Dotson, the provision is unenforceable because (1) it unreasonably protects former and current Beecher customers and is therefore overbroad; (2) its duration period is unreasonably long; and (3) its geographical scope is not sufficiently limited. (*Id.*) The Court will not decide whether the provision is enforceable as a matter of law but holds that a genuine dispute of material facts exists regarding the provision's reasonableness.

**A. Current v. Former Customers**

Dotson's first argues that the non-solicitation provision is unenforceable because it protects both current and former customers; if the provision were

intended to apply only to current Beecher customers, "customers" would be modified by "current." (Doc. 89). Beecher responds that it is Dotson's interpretation, not the provision, that is unreasonable. (Doc. 98). The Court agrees with Beecher.

The purpose of a non-solicitation provision is to prevent former employees from using their employers' resources to steal existing customers. *Olliver/Pilcher Ins., Inc. v. Daniels*, 148 Ariz. 530, 531 (1986). Dotson is correct that a non-solicitation provision that applies to an employer's former customers may be unreasonably overbroad if the employer has no protectable interest in them. *See Hilb, Rogal & Hamilton Co. of Arizona v. McKinney*, 190 Ariz. 213, 216 (Ct. App. 1997). But a court should "interpret a contract in a manner which gives a reasonable meaning to the manifest intent of the parties rather than to an interpretation that would render that contract unreasonable." *Bryceland v. Northey*, 160 Ariz. 213, 216 (Ct. App. 1989). Here, the implication of the provision is to protect Beecher's current same customers. (Doc. 98 at 8).

A simple example illustrates this reading. If an Arizona Diamondbacks baseball player were given a sack of oranges and told to distribute them to his teammates, it would be exceedingly odd for him to drive to California and distribute them to the Giants if he happened to have played for San Francisco last year. If one intends the ballplayer to give the oranges to the Giants, one must be explicit about it: "Give them to your *former* teammates." Without the modifier, only the present is captured. Similarly, without a modifier, only present "customers" are captured in Beecher's non-solicitation provision. Therefore, Dotson's argument lacks merit.

**B. The Two Year Time Limit**

Dotson next argues that the provision is unenforceable because its two-year time limit is unreasonable. (Doc. 89). The duration of a non-solicitation provision is unreasonable when it lasts longer than is necessary for the employer

- 5 -

to put an employee in the vacant position and have time to demonstrate effectiveness to customers. *Valley Med. Specialists v. Farber,* 194 Ariz. 363, 370 (1999). Dotson claims that, since Beecher's customers are contacted multiple times a year, and Beecher employs many individuals who could easily adapt to the needs of new customers, a two-year time limit is unreasonable. (Doc. 89 at 7).

However, Beecher points to a number of reasons suggesting that the two-year period may be reasonable. First, the majority of Beecher's insurance policies renew on an annual basis, and it allegedly[1] takes more than one policy renewal for a new insurance broker assigned to an account to develop good will with a customer. (*Id.*) A two-year non-solicitation provision may thus allow the Beecher replacement employee time to gain the customer's trust.

Second, a two-year duration for a non-solicitation provision likely conforms with industry standards. *See also Hilb*, 190 Ariz. at 215 (declining to find a two-year non-solicitation provision unenforceable). Indeed, Nexus used a two-year non-solicitation provision in its employment agreement with Dotson. (*Id.* at 9.) Further, as an employee at Nexus (while this lawsuit was pending), Dotson also drafted an employment agreement for a new broker that Nexus hired, which also contains a two-year non-solicitation period. (*Id.*)

Accordingly, since the parties reach differing conclusions as to whether the two-year time limit is reasonable, a genuine dispute of material facts remains.

**C. Customer Restriction as a Substitute for a Geographic Restriction**

Relying on cases from other jurisdictions, Dotson lastly argues that the non-solicitation provision is invalid as a matter of law because it does not contain a geographic scope. (Doc. 89). Yet, under Arizona law, a customer restriction can substitute for a geographic restriction. *See Alpha Tax Servs., Inc. v. Stuart*, 158 Ariz. 169, 171 (Ct. App. 1988); *Hilb*, 190 Ariz. at 216. In *Alpha Tax*, for example,

---

[1] The Court notes that the admissibility of this statement is disputed by Dotson. (Doc. 134 at 4). However, this statement is only one of many facts mitigating in favor of a finding of reasonableness regarding the time restriction.

the court upheld a non-solicitation provision that did not contain a geographic scope but was limited to the company's customers. 158 Ariz. at 171. Similarly here, the non-solicitation provision does not contain a geographical restriction but is limited to Beecher's customers.

Therefore, since Dotson has provided no convincing argument as to why the non-solicitation provision in unenforceable as a matter of law, and a genuine dispute of material facts remains as to the reasonableness of the two-year time limit, Dotson's motion for summary judgment will be denied.

**II. Beecher's Motion for Summary Judgment**

Beecher moves for summary judgment on its four claims against Dotson: breach of contract; breach of the covenant of good faith and fair dealing; misappropriation of trade secrets; and breach of the duty of loyalty. (Doc. 113). The Court finds that genuine disputes of material facts exist in all the claims.

**A. Breach of Contract**

To prevail on a breach of contract claim, Beecher must prove: (1) the existence of a valid contract; (2) the breach of a contractual obligation; and (3) damages suffered as a result of that breach. *See Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170 (Ariz. Ct. App. 2005). As evidenced by the discussion in Section I, a genuine dispute of material facts exists regarding whether the non-solicitation provision at issue in Dotson's contract is valid.

**B. Breach of Implied Covenant of Good Faith and Fair Dealing**

Beecher claims that Dotson breached his implied duty of good faith and fair dealing by soliciting clients. (Doc. 113 at 13). Relying on *Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 983 (D. Ariz. 2006) and *Alpha Tax Servs., Inc. v. Stuart*, 158 Ariz. 169 (Ct. App. 1988), Beecher argues that Dotson's conduct constituted solicitation because it was targeted and contained contact information. (Doc. 113 at 13).

However, as Dotson points out, Dotson's contact with Beecher's clients is distinguishable from that in *Compass Bank* and *Alpha Tax Servs.* (Doc. 134 at 5). Unlike in *Compass Bank*, when Dotson communicated with Beecher's clients he expressly told them that he had a non-solicitation agreement with Beecher. (Doc. 134 at 6). Here, there is a concrete and express reason for the contacted Beecher clients not to "assume that the broker wishes for him to transfer his account." *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Schultz*, 2001 WL 1681973 (D.D.C. Feb. 26, 2001). Similarly, the contact in *Alpha Tax Servs* was accompanied by "a discount if the [former] consumer availed himself of [the solicitor's] services." 158 Ariz. at 161. Dotson's contact contained no such inducement.

Since the parties draw different conclusions as to whether Dotson in fact solicited his clients, a genuine dispute of material facts remains with regard to Beecher's claim for breach of implied covenant of good faith and fair dealings.[2]

**C. Misappropriation of Trade Secrets**

Beecher argues that Dotson violated the Arizona Uniform Trade Secrets Act ("AUTSA"). (Doc. 113 at 13). Under the AUTSA, "trade secret" is defined as:

> Information, including a formula, pattern, compilation, program, device, method, technique or process, that both: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

---

[2] Dotson's argument that the implied covenant of good faith and fair dealing claim fails as a matter of law because it is based on conduct already covered by the express contract is procedurally inappropriate and substantively wrong. *See, e.g.*, *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 424, (Ct. App. 2002) ("[A] party can breach the covenant of good faith and fair dealing if the contract speaks to the same subject when the express terms are presumed to be the best indicator of the parties' reasonable expectations….").

- 8 -

1 A.R.S. § 44-401(4). A trade secret under the AUTSA must be "the subject of
2 efforts that are reasonable under the circumstances to maintain its secrecy."
3 *Enterprise Leasing Co. of Phoenix v. Ehmke*, 197 Ariz. 144, (Ct. App. 1999). To
4 violate the AUSTA, the person who acquired the confidential information must
5 have "used improper means to acquire knowledge of the trade secret." A.R.S. §
6 44-401(2).

7 Beecher argues that Dotson violated the AUTSA when he compiled a
8 spreadsheet "containing customer names, revenue, policy renewal dates, and
9 policy information" prior to leaving Beecher. (*Id*. at 15). Second, Dotson
10 "improperly" obtained a copy of CORE's policy notebook by asking CORE for a
11 copy. (*Id*. at 16).

12 Dotson claims that the information he acquired is not secret and that he did
13 not acquire it improperly. The information contained in the spreadsheet Dotson
14 compiled was drawn "from his commission statements" which were given to him
15 "like a pay stub." (Doc. 137 at 15). Further, Beecher "did not do anything to keep
16 Dotson's commission statements a secret," and Beecher neither "required Dotson
17 to return the statements after reviewing them" nor "prohibited him from sharing
18 them." (Doc. 135 at 7). Additionally, the CORE policy notebook was obtained
19 from CORE, and Beecher does not require its customers to sign confidentiality
20 agreements. (*Id*. at 9).

21 Since the parties draw differing conclusions regarding Dotson's conduct
22 and the nature of the information he acquired, genuine disputes of material facts
23 exist as to Beecher's claim for misappropriate of trade secrets.

24 **D. Duty of Loyalty**

25 Beecher moves for summary judgment on its claim for breach of the duty
26 of loyalty. This claim also turns on Dotson's creation of the spreadsheet and
27 contacting Beecher customers. As discussed above, genuine disputes of material
28 facts exist as to both of these actions.

1    Accordingly, genuine disputes of material facts exist for all of Beecher's claims against Dotson; Beecher's motion for summary judgment will therefore be denied.

**III. Nexus' Motion for Summary Judgment**

Nexus moves for summary judgment on the two intentional interference claims brought against it: intentional interference with Beecher's contract with Dotson, and intentional interference with Beecher's business expectancies vis-à-vis its customers. (Doc. 55). The Court finds that there are genuine disputes of material fact in both claims.

In Arizona, a claim for tortious interference with contract is distinct from a claim for tortious interference with business expectancies, though the elements are "virtually identical."[3] *S. Union Co. v. Sw. Gas Corp.*, 180 F. Supp. 2d 1021, 1047 (D. Ariz. 2002). The Court will analyze each claim separately.

**A. Intentional Interference: Beecher's Contractual Relationship with Dotson**

Nexus claims summary judgment is appropriate because Beecher has failed to provide sufficient evidence that Nexus acted intentionally: according to Nexus, Beecher has only provided evidence that Nexus might have been *negligent* in not preventing Mr. Dotson from breaching his contract with Beecher. (Doc. 55 at 4). However, though Beecher does not raise this, it is well established that under Arizona law, "intent is shown by providing that the interferor either intended or knew that a particular result was substantially certain to be produced by its conduct." *Wells Fargo Bank*, 201 Ariz. at 494 (quoting *Snow v. Western Sav. &*

---

[3] To prevail on a claim for intentional interference with contract or business expectancies, Beecher must show: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of Nexus; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) a showing that Nexus acted improperly; and (5) resulting damage to Beecher. *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund, et al.*, 201 Ariz. 474, 493 (2002); *Karsten Mfg. Corp. v. Oshman's Sporting Goods, Inc.*, 869 F. Supp. 778, 781–82 (D. Ariz. 1994).

*Loan Ass'n*, 152 Ariz. 27, 34 (1986)). It is undisputed that Nexus required Dotson to retain legal counsel and instructed him not to breach his contract (Doc. 55 at 3). Yet, Nexus also provided Dotson with resources to call Beecher's clients and accepted the spreadsheet containing "valuable" client information. (Doc. 87 at 14). Thus, whether Nexus knew that Dotson's alleged breach of contract was substantially certain to be produced from its conduct remains in dispute.

### B. Intentional Interference: Beecher's Business Expectancies

Nexus moves for summary judgment on Beecher's claim of intentional interference with business expectancies but does not provide arguments as to why summary judgment is appropriate. (Doc. 55). The Court will briefly address it.

Beecher claims it had a business expectancy vis-à-vis its continued relationship with its customers. (Doc. 87 at 10). Beecher further argues that as a result of Dotson's alleged solicitation, numerous customers moved from Beecher to Nexus, resulting in damages from lost profits. (Doc. 113 at 12). Dotson argues that Beecher has submitted no evidence to confirm that Dotson's alleged solicitation actually caused Beecher's clients moved to Nexus; Dotson claims these clients left Beecher "voluntarily" upon hearing that he had moved to Nexus. (Doc. 134 at 10). There is therefore genuine dispute as to whether Dotson's conduct interfered with Beecher's business expectancies regarding these clients.

Beecher argues, and Nexus does not contest, that Dotson's conduct occurred within the scope of Dotson's employment with Nexus. (Doc. 87 at 12). As Dotson's employer, Nexus is liable for Dotson's conduct that occurred within the scope of his employment. *See McCloud v. Kimbro*, 217 Ariz. 82, 91 (Ct. App. 2007). The fact that Nexus instructed Dotson not to violate the non-solicitation clause is immaterial, as "Arizona courts…have repeatedly held that an employee's improper actions, even those serving his own personal desires or which are expressly forbidden by the employer, are deemed within the course and scope of employment so long as the conduct is incidental to legitimate work activity or

1 actuated at least in part to serve the employer." *Tennenbaum v. Miller*, 2011 WL
2 3875870 (D. Ariz. Sept. 2, 2011). *See also Dube v. Desai*, 218 Ariz. 362, 365 (Ct.
3 App. 2008); *McCloud*, 217 Ariz. at 90.  Hence, based on Dotson's conduct while
4 he was employed by Nexus, genuine disputes of material fact remain regarding
5 Nexus' intentional interference with business expectancies.

6 Accordingly, since genuine disputes of material facts exist for both claims
7 against Nexus, Nexus' motion for summary judgment will be denied.

**IV. Beecher's Motion to Strike Nexus' Response**

9 Nexus has filed a response to Beecher's motion for summary judgment on
10 the claims against Dotson. (Doc. 132). Beecher moves to strike the response on
11 grounds that Nexus's response is duplicative and does not include a controverting
12 statement of facts, as required by LRCiv 56.1(b) (Doc. 138). The Court agrees
13 with Beecher on both grounds and will grant Beecher's motion to strike.

**V. Beecher's Motion for Sanctions Due to Spoliation of Evidence**

15 Having resolved the motions for summary judgment and the motion to
16 strike, the Court turns to Beecher's request for sanctions against Dotson and
17 Nexus due to spoliation of evidence. (Doc. 115). It is undisputed that Dotson
18 created a spreadsheet containing information on Beecher customers. ( Doc. 115-1
19 at 3). Both Dotson and Nexus admit that they possessed copies of the spreadsheet,
20 but neither party has produced the spreadsheet during the discovery phase of this
21 litigation. (Doc. 115-1 at 8, 58).

22 During his deposition on October 4, 2102, Dotson testified that the
23 spreadsheet was located on his computer. (*Id*. at 8). He also testified that he gave a
24 copy to Nexus' Chief Operating Officer, Kevin Steele. (*Id*.) During Steele's
25 deposition he testified that Nexus was provided a copy of the spreadsheet on a
26 thumb drive but that he could not find it; he may have given the thumb drive back
27 to Dotson, but he could not be sure. (*Id*. at 58). Dotson then failed to produce the
28 spreadsheet despite Beecher's numerous discovery requests. (Doc. 115). When

Nexus was added as a defendant to this lawsuit, it too failed to provide a copy of the spreadsheet. (*Id.*) Beecher argues that the defendants had a duty to preserve the spreadsheet and that their conduct has resulted in spoliation. The Court agrees with Beecher and will grant Beecher's motion for sanctions.

The Court has the inherent power to impose sanctions for the destruction of documents. *Medical Laboratory Mgt. Consultants v. American Broadcasting Companies, Inc.,* 306 F.3d 806, 824 (9th Cir. 2002); *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993). Appropriate sanctions include any one or more of the following: (1) dismissing claims; (2) drawing adverse inferences about the contents of the documents destroyed; (3) excluding testimony and evidence; and/or (4) awarding fees and costs. *Leon v. IDX Systems Corp.,* 464 F.3d 951, 958 (9th Cir. 2006); *Glover*, 6 F.3d at 1329; *In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1070–78 (N.D. Cal. 2006). A party seeking sanctions based on the spoliation of evidence must demonstrate the presence of three elements:

> (1) That the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Napster*, 462 F. Supp.2d at 1078. Each element is addressed below.

### A. Duty to Preserve

As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action. *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556–58 (N.D. Cal. 1987); *Glover*, 6 F.3d at 1329.

Dotson acknowledges he contacted those customers who were included on the spreadsheet. (Doc. 115-1 at 8). Once Beecher learned of Dotson's conduct, Beecher sent Dotson a cease and desist letter on October 31, 2011, and Dotson

informed Nexus about Beecher's letter as soon as he received it. (Doc. 115-1 at 58). Hence, both Dotson and Nexus had notice of Beecher's potential lawsuit as of October 2011. Moreover, after the lawsuit had been filed, and at the time of his deposition on October 4, 2012, Dotson acknowledged he still had the spreadsheet on his computer and testified that the spreadsheet was likely maintained on his back-up files as well. (*Id*. at 8). Thus, at the very least, both Dotson and Nexus were on notice and had a duty to preserve the spreadsheet as of October 4, 2012.

### B. Culpable State of Mind

Courts have not been uniform in defining the level of culpability that is required before sanctions are appropriate for evidence destruction. *Reinsdorf v. Skechers U.S.A., Inc.*, 2013 WL 3878685, *20 (C.D. Cal. 2013). In the Ninth Circuit, it appears that a finding of "bad faith" is not a prerequisite to an award of sanctions; "a finding of bad faith will suffice, but so will simple notice of 'potential relevance to the litigation.'" *Glover*, 6 F.3d at 1329 (*citing Akiona v. United States,* 938 F.2d 158, 161 (9th Cir.1991). Nevertheless, "a party's motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed." *Napster*, 462 F.Supp.2d at 1066–67.

Here, both Dotson and Nexus admit they possessed the spreadsheet (Doc. 115-1 at 8, 58). In light of the lack of explanation for how the spreadsheet was destroyed, the Court holds that the defendants acted with a sufficient culpable state of mind, given that both Dotson and Nexus were on notice of the spreadsheet's "potential relevance to litigation." *See Glover*, 6 F.3d at 1329.

### C. Relevance to Beecher's Claims

The missing spreadsheet is clearly relevant because it contains potential evidence that support Beecher's claims against Dotson and Nexus. Dotson's description of the information contained on the spreadsheet indicates the spreadsheet is relevant to Beecher's breach of contract claim, breach of the covenant of good faith and fair dealing claim, and misappropriation of trade

secrets claim. Further, because Dotson created the spreadsheet and provided it to Nexus while he was employed by Beecher, it is also relevant to Beecher's breach of the duty of loyalty claim against Dotson and Beecher's intentional interference of contract claim against Nexus. The spreadsheet may also demonstrate the alleged "improper means" Nexus used to interfere with Beecher's relationship with its customers and contractual relationships. Lastly, because Beecher does not have access to it, the full contents of the spreadsheet and thus its further relevance remain unknown.

### D. An Adverse Inference Sanction is Appropriate in this Case

Having determined that the necessary elements for spoliation of sanctions have been met, the Court must determine which sanction to award. Beecher first seeks terminating sanctions in the form of a default judgment; if the Court decides default judgment is inappropriate, Beecher requests an adverse inference instruction. (Doc. 126 at 10). The Court awards the latter.

The Ninth Circuit has established a five-part test to determine whether a terminating sanction is just:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998); *Surowiec v. Capital Title Agency*, Inc., 790 F. Supp. 2d 997, 1009 (D. Ariz. 2011) In this case, the Court and the public have a strong interest in judicial efficiency and the prompt resolution of litigation. Dotson's and Nexus' failure to preserve evidence, and the resulting delay caused by discovery disputes and the instant motion for sanctions, weigh in favor of default judgment. In addition, Beecher has been prejudiced by the spoliation of the spreadsheet, though not so much so that Beecher must rely solely on "spotty" evidence. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). The fourth and fifth factors weigh heavily against a

terminating sanction, particularly in light of the availability of a less drastic sanction. Applying the five-factor test, the Court finds entry of default judgment to be unwarranted. Because Dotson and Nexus had notice that the spreadsheet is relevant to this litigation, but it has not been preserved, the Court finds that the adverse inference sanction is appropriate. The precise terms of that instruction shall be determined immediately prior to trial.

Accordingly,

**IT IS ORDERED** that Dotson's motion for summary judgment (**Doc. 89**) is **DENIED**.

**IT IS FURTHER ORDERED** that Beecher's motion for summary judgment (**Doc. 113**) is **DENIED**.

**IT IS FURTHER ORDERED** that Nexus' motion for summary judgment (**Doc. 55**) is **DENIED**.

**IT IS FURTHER ORDERED** that Beecher's motion to strike Nexus' response to Beecher's motion for summary judgment (**Doc. 138**) is **GRANTED**.

**IT IS FURTHER ORDERED** that Beecher's motion for sanctions (**Doc. 115**) is **GRANTED**. Beecher shall submit its proposed Adverse Instructions **no later than October 9, 2013**.

**IT IS FURTHER ORDERED** that the parties shall file notice whether they wish to arrange for private mediation or have this case referred to a magistrate judge for a settlement conference **no later than October 9, 2013**. If the parties do not wish to engage in settlement discussions, the notice shall so state.

/
/
/

**IT IS FURTHER ORDERED** the parties shall file their Joint Party Pretrial Order fourteen days after the completion of settlement negotiations or **no later than October 23, 2013**.

Dated this 25th day of September, 2013.

_____
Roslyn O. Silver
Senior United States District Judge